UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

June White,
        Plaintiff

        v.                                  Case No. 13-cv-251-SM
                                            Opinion No. 2015 DNH 176
Cynthia Ortiz, et al.,
        Defendants

**O R D E R**

Pro se plaintiff, June White, is a resident of New Hampshire
and the author of an "unauthorized biography" of her son, Dana,
who is the president of the mixed martial arts ("MMA")
organization known as the Ultimate Fighting Championship ("UFC").
The defendant, Cynthia Ortiz, is a resident of Holt, Michigan.
Ortiz is, it would seem, a fan of neither White nor her book.

Following the book's release, Ortiz began publishing
numerous statements on various Internet websites that were highly
critical of the author.  Ortiz published many (if not all) of
those statements using pseudonyms, in an effort to conceal her
identity.  She also appears to have used social media to further
her attack on White, by publishing numerous statements on Twitter
while posing as "The Real June White" ("@RealJuneWhite") -
statements White says were false and demeaning comments on her
character, conduct, and her book.

In her amended complaint, White advances three common law claims against Ortiz: invasion of privacy by appropriation of her name (i.e., use of the Twitter account), defamation, and libel per se. She asserts that because she and Ortiz are citizens of different states and the amount in controversy exceeds $75,000, the court may properly exercise diversity subject matter jurisdiction over her claims. See 28 U.S.C. § 1332. Pending before the court is Ortiz's motion to dismiss all three claims for failure to state a viable cause of action. See Fed. R. Civ. P. 12(b)(6). For the reasons given below, the motion is denied.

## Standard of Review

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010). Although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the essential elements of a viable cause of action and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal punctuation omitted).

In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted).  Instead, the facts alleged in the complaint must, if credited as true, be sufficient to "nudge[] [plaintiff's] claims across the line from conceivable to plausible." <u>Id</u>. at 570.  If, however, the "factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." <u>Tambone</u>, 597 F.3d at 442.

## Background

Accepting the allegations advanced in White's amended complaint as true, and based upon the admissions made in Ortiz's various filings, the relevant facts are as follows.  Soon after White's book was released, Ortiz began publishing disturbing, vulgar, malicious, and inflammatory statements about White on various websites and through social media.  Ortiz made those statements using a variety of pseudonyms, including "HBIC" (apparently shorthand for "head bitch in charge"), "TonyF575," "SE Hinton," "Lane Conley," "Joe Blow," and "Mark Twain."  Ortiz also apparently registered the Twitter name "The Real June

3

White," under which she published various vulgar and humiliating statements while purporting to be the plaintiff.  Based upon the statements attributed to Ortiz in the amended complaint, and the many attached exhibits which chronicle some of Ortiz's statements, it seems safe to say that Ortiz is, in the vernacular of the Internet, a troll.[1]

A representative (though by no means exhaustive) list of some examples of Ortiz's work includes the following.  While posing as "Tony Foster" ("TonyF575"), Ortiz published numerous statements on Twitter accusing White of being a bad parent, saying her children hate her and "disowned" her, asserting that she is mentally ill, and claiming she was a "barhoppin drop out 4 a mom" who "couldn't stay out of the bars long enough" to raise her son.  Exhibits to Amended Complaint (document no. 48-1) at 12 (Twitter transcript).  While White denies knowing Ortiz, Ortiz often asserted that she had personal knowledge about the topics on which she wrote (e.g., "I used 2 work 4 the IFL.  Want me to continue cuz I will.  U know what Im talkn about," "Truth hurts,

---

[1]     Wikipedia defines a "troll" as someone "who sows discord on the Internet by starting arguments or upsetting people, by posting inflammatory, extraneous, or off-topic messages in an online community (such as a newsgroup, forum, chat room, or blog) with the deliberate intent of provoking readers into an emotional response or of otherwise disrupting normal on-topic discussion."  https://en.wikipedia.org/wiki/Internet_troll (footnotes omitted).

doesn't it?," "What's the matter, June?  Did some of my information hit too close to home?" and, "The wife is friends w/her daughter & she hates June!"  Id. at 11, 17, and 29.[2]

Under the moniker "JoeBlow," Ortiz implied White had incestuous relations with family members (comments Ortiz elaborated upon elsewhere), was estranged from her children, and suffered from mental illness: "[White] should have stuck to doing her father and brothers instead of trying her hand at writing . . . Her only daughter Kelly cut her off, too.  She won't let her kids see Grandma because she's freakin off her rocker!"  Id. at 31.  On a public book review page hosted on Amazon.com, and writing under the pseudonym "SE Hinton," Ortiz directed her venomous rants directly at White:

> You were a crappy mother and Dana and Kelly are going to hold that against you for the rest of your miserable life.  They hated you way before the book.  You can't even keep your lies straight in interviews. . . . [Y]our own mother told all of us the crap you used to put her through regarding Dana.  You tried to get her to make him feel guilty about his relationship with you but she didn't do it because you are crazy and she knew it.  And you lied about him ever saying he would.  Why?
>
> I know you lied because until you finally showed up to spend time with her it was MY mother who checked in on her daily and kept her company.  Your mom told us what a disappointment you were and shared some of the cruel

---

[2]    Perhaps in an effort to fit more comfortably into the world of mixed martial arts and its fan base, Ortiz often adopted male personas when publishing online.

stunts you have pulled over the years trying to become
a "somebody" as she put it.  You lied to your family
about being on your deathbed 3 years ago. . . . that's
the last time [Dana] let you extort cash from him
($50,000) because he was seeing through your BS.

And June, Dana succeeded despite you, not because of
you.  And your mom is the one who took care of these
kids, not you.  And stop lying about how much you
worked and that's why you weren't home much because she
told us how many times she called the bars telling you
to come home and when you did, you usually had a
strange man w/you.

People, this lady is nuts.  Both of her kids are
excellent parents according to June's mother.  They got
away from her as soon as they could.  Neither allow her
to see their kids (or grandkids) for many valid
reasons, the final straw w/Dana being when she
kidnapped Dana III [June's grandson] from a hotel room
6 or so years ago.

Exhibits to Amended Complaint (document no. 48-2) at 1-2,

comments to book review posted by "SE Hinton."[3]


In another posting on Amazon, Ortiz (again posting as "SE

Hinton") wrote that "I personally know June and she has become a

bitter woman . . . her kids want nothing to do with her . . . she

is as vindictive as they come and the woman lies continuously.

She's got a screw loose. . . . June has needed help for years and

this book of mostly lies is the result of her not getting it."

---

[3]    Susan Eloise Hinton ("S.E. Hinton") is an American
writer of young-adult fiction.  She is best-known for her book
"The Outsiders," a film-adaptation of which was produced by
Francis Ford Coppola and released in 1983.  See, e.g.,
http://www.sehinton.com

Id. at 5 (emphasis supplied).  In a similar vein, Ortiz continued by asserting that, "June disgusts Dana so much that I'm starting to wonder if she is a pedophile like her father.  She's a bar-hopping drunk."  Id. at 6.

Under the pseudonym "The Real June White," Ortiz published a number of statements on Twitter including, for example, "I am publically apologizing 4 ever writing that horrendous book about my son.  Most wasn't true.  I am reaping what I sowed and now my only 2 children hate me."  Exhibits to Amended Complaint (document no. 48-3) at 1.  And, on a website discussing White's book, Ortiz (posting as "Mark Twain" and again purporting to have personal knowledge of White and her family) wrote:

> The wife has been friends with Dana's sister's for
> years and I can tell you Kelly is humiliated by her
> mother [sic] book . . . June White is vindictive,
> greedy, nosy and a pathalogical liar.  What June left
> out [of the book] was that she had physical
> relationships with her brothers and father well into
> her teens.  Three of those "fucks" ended in abortions.
> She ran around on Dana's & Kelly's father which is why
> HE left HER.

Exhibits to Amended Complaint (document no. 48-6) at 1.

The exhibits to the amended complaint contain many more statements attributed to Ortiz that are of a similar vein.  But, in her motion to dismiss, Ortiz focuses on only eleven that are

specifically referenced in the amended complaint itself.  In
support of her motion to dismiss, Ortiz asserts that her comments
are constitutionally protected and, therefore, not actionable.
See, e.g., Defendant's Memorandum (document no. 64-1) at 10
("Given the context of the complained of statements set forth in
the Complaint, Defendant's Internet comments are non-actionable
statements of protected opinion, requiring dismissal of the
defamation counts as a matter of law.").  According to Ortiz,
White "stepped into this high octane public arena [of mixed
martial arts and the UFC] when she published a highly critical
'unauthorized biography' of her son."  Defendant's memorandum at
2.  In response, Ortiz claims that she merely "applied the
combative nature of the UFC to her posts" which, while "profane
and outrageous," id. at 3, are nonetheless constitutionally
protected or otherwise not actionable.


     The court is constrained to disagree with Ortiz's expansive
interpretation of the protections afforded by the First Amendment
to statements posted on the Internet and through social media.
Accepting the allegations White makes in the amended complaint as
true, at least some (of the many) statements attributed to Ortiz
are far from constitutionally protected.

**Discussion**

I.   Invasion of Privacy - Appropriation of Name.

White asserts that Ortiz is liable for appropriating her identity - a form of invasion of privacy - by appearing on Twitter as "The Real June White" and posting false, demeaning comments about White's character and the truthfulness of the book.[4]


The New Hampshire Supreme Court has specifically held that, "New Hampshire recognizes the tort of invasion of privacy by appropriation of an individual's name or likeness." <u>Remsburg v. Docusearch, Inc.</u>, 149 N.H. 148, 157 (2003).  The <u>Remsburg</u> court described the nature and contours of the tort as follows:

> The interest protected by the rule is the interest of
> the individual in the exclusive use of his own
> identity, in so far as it is represented by his name or

---

[4]    According to the Twitter transcripts attached to the amended complaint, Ortiz posted numerous "confessions" or "apologies" using the handle @RealJuneWhite, including the following:

"I am publically apologizing 4 ever writing that horrendous book about my son.  Most wasn't true.  I am reaping what I sowed and now my only 2 children hate me."  Document 48-3, at 1.

I'm a lousy mom.  Wrote book of lies about my millionaire son hoping he'd pay me b4 I pub'd it.  He told me to fuck myself!  What'll I do now?  <u>Id.</u> at 2.

"I'M VERY VERY SORRY!!!!!!!!!!!!!!!!!!!!!"  <u>Id.</u>

likeness, and in so far as the use may be of benefit to him or to others.

Tortious liability for appropriation of a name or likeness is intended to protect the value of an individual's notoriety or skill. Thus, . . . in order that there may be liability under the rule stated in this Section, <u>the defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness</u>. The misappropriation tort does not protect one's name <u>per se</u>; rather <u>it protects the value associated with that name</u>.

Appropriation is not actionable if the person's name or likeness is published for purposes other than taking advantage of the person's reputation, prestige or other value associated with the person. Thus, appropriation occurs most often when the person's name or likeness is used to advertise the defendant's product or when the defendant impersonates the person for gain.

<u>Id.</u>, at 157-58 (citations and internal punctuation omitted) (emphasis supplied).

Ortiz claims she cannot be liable under a theory of identity appropriation because she did not use White's name in an effort to obtain monetary gain or commercial success from White's "reputation, prestige or other value associated with" her name. The court disagrees. The New Hampshire Supreme Court did not limit the tort exclusively to situations in which a defendant has employed another's name or likeness for personal financial gain; it merely listed that purpose as a fairly common example.

10

Here, Ortiz employed the Twitter handle "The Real June White" in an effort to leverage White's name and reputation, thus giving the false "confessions" Ortiz published presumptive credibility.  Absent the use of White's name in association with those statements, Ortiz would likely have been seen as simply another crank publishing incendiary, derogatory, and demeaning comments on Twitter.  But, by appropriating White's name (and the credibility and notoriety associated with that name), Ortiz added weight and validity to her posts.  That act of appropriation lent value to those "confessions," and furthered Ortiz's apparent goal of perpetrating a fraud on the public, undermining sales of White's book, and ruining White's reputation.  It is, therefore, actionable conduct under New Hampshire's common law, and Ortiz's motion to dismiss White's invasion of privacy claim is denied.[5]

---

[5]    Parenthetically, the court notes that Ortiz's claim that her use of the Twitter handle "The Real June White" served as "a signal that it may be an imposter," defendant's memorandum at 25, is unpersuasive.  There are numerous examples of people using the word "real" in their Twitter names.  For example, a well-known Boston sportscaster and local personality, Jack Edwards, posts on Twitter under the handle, "RealJackEdwards" – presumably because when he created his Twitter account the name "JackEdwards" was already in use.  See https://twitter.com/ realjackedwards.  Similarly, Republican presidential candidate Donald Trump uses the Twitter handle "RealDonaldTrump."  See https://twitter.com/realdonaldtrump.  See also https://twitter.com/therealtoriamos (Tori Amos); https://twitter.com/RealLamarOdom (Lamar Odom).

II.  Defamation and Libel Per Se.[6]

     In moving to dismiss White's defamation claims, Ortiz
asserts that, "through her book and self-promotional tours,
Plaintiff entered into the smack down world of the MMA and
actively sought media attention and publicity."  Defendant's
memorandum at 7.  In so doing, says Ortiz, White became a limited
public figure and must, therefore, carry a higher burden of proof
to prevail on her claims.

     For purposes of resolving Ortiz's motion, the court will
assume (without resolving) that White is a limited public figure.
Consequently, to state a viable defamation claim, White's amended
complaint must first allege that Ortiz "failed to exercise
reasonable care in publishing a false and defamatory statement of
fact about the plaintiff to a third party."  Pierson v. Hubbard,
147 N.H. 760, 763 (2002).  A statement is defamatory if it tends
to "lower the plaintiff in the esteem of any substantial and
respectable group, even though it may be quite a small minority."

---

     [6]     "Libel per se" is merely a form of defamation which, if
proved, reduces plaintiff's burden of proof with regard to
damages.  See, e.g., Chagnon v. Union Leader Corp., 103 N.H. 426,
441 (1961) ("When as in this case, the jury could find that the
defamatory publication charged the plaintiff with a crime or with
activities which would tend to injure him in his trade or
business, commonly called libel per se, he can recover as general
damages all damages which would normally result from such a
defamation, such as harm to his reputation.  He need not prove
these damages, specifically.") (citations omitted).  See also
Lassonde v. Stanton, 157 N.H. 582, 592-93 (2008).

Sanguedolce v. Wolfe, 164 N.H. 644, 646 (2013) (citation

omitted).  Additionally, assuming White is a limited public

figure, her amended complaint must also allege that Ortiz acted

with malice – that is, "with knowledge that [a statement] was

false or with reckless disregard of whether it was false or not."

New York Times Co. v. Sullivan 376 U.S. 254, 280 (1964).


    Viewing White's amended complaint in its entirety (including

the sizeable number of attached statements attributed to Ortiz),

it is plain that it adequately pleads the essential elements of a

viable claim for defamation (and libel per se).  That is, it

alleges that Ortiz published false and defamatory statements of

fact about White; that those statements were published to third

parties; that Ortiz published those statements with knowledge

that they were false or with a reckless disregard for whether

they were false; and, as a consequence, that White has suffered

damages.  See, e.g., Amended Complaint at paras. 13-15.


    The problem is this: while the attachments to the amended

complaint contain numerous statements attributed to Ortiz that

are, at least arguably, actionable, the amended complaint itself

only identifies a few representative examples.  And, Ortiz is

entitled to know precisely which statements are sued upon and

against which she must defend.  See, e.g., Ford v. Clement, 834

F. Supp. 72, 78 (S.D.N.Y. 1993) ("In pleading an action for
defamation, the allegations of the complaint must afford
defendant sufficient notice of the communications complained of
to enable him to defend himself.") (citations and internal
punctuation omitted).  See also Phantom Touring, Inc. v.
Affiliated Publications, 953 F.2d 724, 728 n.6 (1st Cir. 1992).

    White filed her amended complaint on February 4, 2015, and
it was docketed on March 20, 2015 (after the Magistrate Judge
granted her motion for leave to file).  That was prior to White's
discovery that Ortiz was the person who had published the
allegedly defamatory statements made by "SE Hinton" and others.
See, e.g., Defendant's Acknowledgment (document no. 51) (dated
April 14, 2015).  Additionally, it probably bears noting that
White is proceeding pro se and is, therefore, entitled to a bit
more latitude than a party who is represented by counsel.  See,
e.g., Lema v. United States, 987 F.2d 48, 54 n.5 (1st Cir. 1993)
("Given Lema's pro se status, the reference by attachment, though
perhaps technically deficient, was sufficient to alert the court
and the government to the specific basis of Lema's claim.").  See
also Haines v. Kerner, 404 U.S. 519, 520-21 (1972) ("We cannot
say with assurance that under the allegations of the pro se
complaint, which we hold to less stringent standards than formal
pleadings drafted by lawyers, it appears beyond doubt that the

                              14

plaintiff can prove no set of facts in support of his claim which
would entitle him to relief.") (citations and internal
punctuation omitted).

In light of the foregoing, White is directed to file a
second amended complaint, in which she identifies/lists precisely
which statements form the basis of her defamation and invasion of
privacy claims.  The court will only consider those statements
that are specifically enumerated in the second amended complaint.

Finally, the court declines Ortiz's invitation to analyze
each of the eleven statements she has identified in the amended
complaint to determine whether any are actionable.  As noted
above, the amended complaint adequately alleges the essential
elements of a viable cause of action for defamation.  And, at
this stage of the litigation, "[t]o engage in a detailed analysis
of each statement alleged would not promote the expeditious
disposition of this case, especially in light of the strong
possibility that Plaintiff[] will seek leave to amend [her]
Complaint to add to the list of allegedly defamatory statements."
Veilleux v. Natl. Broad. Co., Inc., 8 F. Supp. 2d 23, 36 (D. Me.
1998).

**Conclusion**

For the foregoing reasons, defendant's motion to dismiss all counts in the amended complaint (document no. 64) is denied.

On or before October 16, 2015, plaintiff shall file a second amended complaint in which she specifically identifies those statements attributed to Ortiz that form the basis of her defamation and invasion of privacy claims.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

September 14, 2015

cc:  June White, pro se
     Dustin M. Lee, Esq.
     Lucy J. Karl, Esq.
     Steven M. Gordon, Esq.
     Timothy J. McLaughlin

16